**The below described is SIGNED.**

Dated: October 05, 2011

R. KIMBALL MOSIER
U.S. Bankruptcy Judge



_____

Steven J. McCardell (2144)
smccardell@djplaw.com
Kenneth L. Cannon II (3705)
kcannon@djplaw.com
DURHAM JONES & PINEGAR, P.C.
111 East Broadway, Suite 900
P.O. Box 4050
Salt Lake City, UT 84110-4050
Telephone: (801) 415-3000
Facsimile: (801) 415-3500
Proposed Attorneys for the Debtors

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| In re:<br><br>KOREA TECHNOLOGY INDUSTRY<br>AMERICA, INC. et al.,<br><br>Debtors. | Bankruptcy Case No. 11-32259<br>Jointly Administered<br>Chapter 11<br>Honorable R. Kimball Mosier<br>[FILED ELECTRONICALLY] |
|---|---|

**ORDER UNDER 11 U.S.C. §§ 105, 363, AND 364, FED. R. BANKR. P. 2002, 4001,
9014, AND LOCAL RULE 4001-2 AUTHORIZING DEBTOR TO OBTAIN
POSTPETITION FINANCING ON SUPERPRIORITY AND SECURED BASIS**

The motion ("Motion") of debtor Korea Technology Industry America, Inc., Uintah Basin Resources, LLC; and Crown Asphalt Ridge, L.L.C., as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors" and each, a "Debtor"), for interim and final Orders approving postpetition financing on a secured and superpriority basis (the "DIP Financing"), pursuant to sections 105, 364(c)(1), 364(c)(2), 364(c)(3), and 364(e), Rules 2002, 4001(c), and 9014 of the Federal Rules of Bankruptcy Procedure (the "Federal

Rules"), and Local Rule 4001-2, came on for hearing as scheduled on September 29, 2011. Interim hearing on the Motion was continued to September 29, 2011 from an earlier date and was combined with the final hearing on the Motion. Appearances were as noted on the record.

Objections or limited objections to the Motion (the "Objections") were filed by Western Energy Partners, LLC, Elgin Services Corporation, Lawrence K. Deppe, d/b/a Processed Engineered Products, and the United States Trustee. At the hearing, counsel for the Debtors announced that Rutter & Wilbanks Corporation, the lender, had agreed not to take a security interest in avoidance actions under sections 544, 545, 547, 548, 549, and 550, though it will be continue to be granted a security interest in property recovered pursuant to section 543 (though counsel for the Debtors also clarified that property recovered pursuant to section 543 will remain subject to valid liens that encumber the property prior to the transfer of that property to Tar Sands Holdings, LLC). Counsel for the Debtors also announced that the maturity date of the DIP Financing and the promissory note issued thereunder is extended from February 1, 2012, to June 30, 2012.

The Court, having reviewed and considered the Motion and the modifications thereto announced at the hearing, the declaration of Soung Joon Kim dated August 22, 2011 filed in support of the Motion and other motions, other evidence presented or proffered by the Debtors and other parties, and other documents filed in connection with the relief requested in the Motion, and arguments of counsel,; the Objections having been withdrawn based on the modifications and clarifications announced by the Debtors' counsel on the record; the Court having made findings and conclusions on the record, which are by this reference incorporated herein; and after due deliberation and good cause appearing therefor;

2

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A. On August 22, 2011, (the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code, thus commencing chapter 11 reorganization cases.

B. On August 22, 2011, the Court entered Orders jointly administering the Debtors' cases and approving payment of certain prepetition salaries and benefits for the Debtors' employees. The Debtors require the DIP Financing in order to pay these employee salary and benefit obligations as well as ongoing employee salary and benefit obligations.

C. The Debtors have requested that Rutter & Wilbanks, or its designee or assignee (the "Lender"), advance up to $300,000, and the Lender has agreed to extend on the terms set forth in the Debtor in Possession Loan and Security Agreement dated August 30, 2011 (the "DIP Loan Agreement"), up to that amount on a postpetition, secured, superpriority basis.

D. The Debtors and the Lender have conducted good faith negotiations for the extension of the DIP Financing, which negotiations have been at arms' length, and the proposed terms and conditions of the DIP Financing are fair and equitable and in the best interests of the Debtors' estates. The Lender is extending credit in good faith pursuant to the DIP Financing.

E. The Debtors have represented that they are unable to obtain postpetition financing in the form of unsecured credit allowable as an administrative expense under sections 503(b)(1), 364(a), 264(b), and 364(c)(1) of the Bankruptcy Code.

F. In the absence of adequate financing, the Debtors will be unable to maintain their operations and preserve and maximize the value of their estates. The financing approved hereby (i) will permit the Debtors to maintain the value of their assets during the pendency of their cases, and (ii) is limited to the amount of up to and including the principal amount of $300,000.

SLC_929217.4

G. Proper, timely, and adequate notice of the hearing and the Motion and of the relief proposed in the Motion has been given, and the notice was reasonable and appropriate under the circumstances and comports in all regards with the requirements of due process, Bankruptcy Rules 2002 and 4001, and the rules of this Court.

H. Determination of the Motion is a core proceeding under 28 U.S.C. § 157(b), and the Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. §§ 157 and 1334.

Based on these findings and determinations, the Court hereby

**ORDERS:**

1. The Motion is granted as set forth in this Order and in accordance with Bankruptcy Code section 364, Bankruptcy Rules 2002 and 4001(c), and Local Rule 4001-2, and the Objections, to the extent not withdrawn or settled, are overruled.

2. The Debtor is authorized to execute and upon execution shall be bound by the DIP Loan Agreement and to borrow up to $300,000 under the DIP Loan Agreement.

3. All amounts loaned by the Lender in accordance with this Order and the DIP Loan Agreement shall be entitled, pursuant to section 364(c)(1) of the Bankruptcy Code, to a superpriority administrative expense claim over all other costs and expenses of the kinds specified in, or ordered pursuant to, section 105, 326, 330, 331, 503(b), 507(c), 507(a), 507(b), 726, or any other provisions of the Bankruptcy Code, subject only to the Carve-Out. The "Carve-Out" means, collectively, (a) the fees of the U.S. Trustee pursuant to 28 U.S.C. §1930, and (b) any unpaid fees, costs and expenses that were accrued or incurred, following the Petition Date, by the professionals retained by Borrowers or the professionals retained by any official

4

unsecured creditors' committee, in each case to the extent allowed by an order of this Court, in an aggregate amount not to exceed $100,000.00, provided that any payments actually made to such professionals by order of the Bankruptcy Court after the occurrence of an Event of Default on account of fees and expenses actually incurred after the occurrence of such Event of Default shall reduce such $100,000.00 amount on a dollar-for-dollar basis.

4. All amounts loaned by the Lender in accordance with this Order and the DIP Loan Agreement, is hereby granted (a) pursuant to section 364(c)(2) of the Bankruptcy Code, a fully-perfected first priority lien on Collateral (as defined in the DIP Loan Agreement) consisting of property, existing as of the Petition Date, if any, and acquired after the Petition Date, that was unencumbered by any lien as of the Petition Date, (b) pursuant to section 364(c)(3) of the Bankruptcy Code, a fully perfected junior lien on Collateral consisting of property, existing as of the Petition Date and acquired after the Petition Date, that was subject to valid, perfected and unavoidable liens as of the Petition Date. The Collateral includes all rights, claims, and other causes of action of the Debtors' estates (including any actions asserted by the Debtors or any subsequently-appointed trustees or representatives of the Debtors' estates under any section of the Bankruptcy Code, and in each case, all proceeds resulting therefrom, excluding avoidance actions under sections 544, 545, 547, 548, 549, and 550 of the Bankruptcy Code. The Collateral does include property recovered pursuant to section 543 of the Bankruptcy Code.

5. The liens granted to the Lender by this Order are perfected by operation of law upon execution of this Order by the Court. The Lender shall not be required to file financing statements, mortgages, or any other document in any jurisdiction or to take any other action in order to validate or perfect the liens granted hereunder. If the Lender chooses, in its sole

discretion, to file financing statements, mortgages, or other documents, or otherwise confirm perfection of such liens, (a) the Lender is hereby authorized to effect such filings, (b) all such financing statements, mortgages, or similar documents shall be deemed to have been filed on the Petition Date, and (c) the automatic stay of Bankruptcy Code section 362 is hereby modified to the extent necessary to permit the filing of all such financing statements, mortgages, and similar documents.

6. Without further order of the Court, the automatic stay of section 362 of the Bankruptcy Code is hereby modified to the extent necessary to permit the Lender to take, upon the occurrence and during the continuance of any Event of Default (as defined in the DIP Loan Agreement), any of all of the following actions: (a) cease making any advances under the DIP Loan Agreement, (b) declare all obligations under the DIP Loan Agreement to be immediately due and payable, and (c) charge the default rate of interest as provided for under the DIP Loan Agreement.  In addition, so long as the Lender has provided ten days' prior written notice to the Debtors (with a copy to counsel for any official unsecured creditors' committee appointed in the Debtors' cases or to those listed on the Debtors' lists of twenty largest unsecured creditors if no committee has been appointed or is in existence), those asserting prior liens on the Debtors' assets, and the United State Trustee, the Lender may take any other action or exercise any other right and remedy available to under the DIP Loan Agreement or otherwise at law or in equity, as set forth in the DIP Loan Agreement.  The Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this paragraph and relating ot the application, re-imposition, or continuance of the automatic stay as provided in this paragraph.

6

7. Neither the Debtors nor their estates shall incur any debt with priority equal to or greater than that of the Lender, without full and final payment of the DIP Financing.

8. The rights, benefits, remedies, powers, privileges, security interests, liens, and priorities granted to the Lender hereby, and as provided by the DIP Loan Agreement, shall not be modified, altered, or impaired in any manner by any subsequent order (including a confirmation order), or by any plan of reorganization in the Debtors' cases unless all obligations owing to the Lender under the DIP Loan Agreement shall have been fully and finally paid or the Lender has otherwise consented thereto.

9. Pursuant to section 364(e), in the event than any or all of the provisions of this Order are hereafter modified, amended, vacated, or stayed, such modification, amendment, vacation, or stay shall not affect (a) the validity, priority, enforceability, or perfected status of any liens granted to the Lender hereunder, (b) the validity, priority, and enforceability of any payment made to the Lender pursuant hereto, or (c) the rights and remedies granted to the lender pursuant hereto. Notwithstanding any such modification, amendment, vacation, or stay, all borrowings and other financial accommodations made pursuant to this Order and the DIP Loan Agreement prior thereto shall be entitled to all the rights, privileges, and benefits of this Order and the DIP Loan Agreement as in effect prior thereto with respect to all such borrowings and financial accommodations.

10. The Court has considered and determined the matters addressed herein pursuant to its power under section 363 and 364 of the Bankruptcy Code, including the power to authorize the Debtors to obtain credit on the terms and conditions upon which the Debtors and the Lender have agreed. Each of such terms and conditions constitutes a part of the authorization under

7

section 364 and is, therefore, subject to the protections contained in section 364(e) of the Bankruptcy Code.

11. Notwithstanding anything to the contrary, this Order shall not be construed in any way as a waiver or relinquishment of any rights the Lender may have to be heard on any matter brought to the Court to seek the appointment of a trustee or examiner under section 1104 of the Bankruptcy Code, conversion of the Debtors' cases to cases under chapter 7 pursuant to section 1112 of the Bankruptcy Code, or oppose extension of the exclusivity period under section 1121 of the Bankruptcy Code.

12. This Order shall be effective immediately upon its approval by the Court notwithstanding Bankruptcy Rule 6004.

**\*\*\*\*\*END OF DOCUMENT\*\*\*\*\***

## **SERVICE LIST**

       Service of the foregoing Order under 11 U.S.C. §§ 105, 363, and 364, Fed. R. Bankr. P. 2002, 4001, 9014, and Local Rule 4001-2 Authorizing Debtor to Obtain Postpetition Financing on Superpriority and Secured Basis will be effected through the Bankruptcy Noticing Center to the parties listed with the Court in these matters.



9